UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
UNITED STATES OF AMERICA

       - against -

QUAYSEAN CANNONIER,

          Defendant.
---------------------------------------X

**MEMORANDUM AND ORDER**
20 Cr. 674 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Defendant Quaysean Cannonier is charged in a two-count indictment alleging that he possessed a nine millimeter pistol and five rounds of nine millimeter ammunition after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g). Presently before the Court is Cannonier's motion to suppress, to dismiss, and for a hearing. For the following reasons, the motion is denied.[1]

## BACKGROUND

On or about November 13, 2020, New York City Police Department ("NYPD") Detective Tatiana Cruz and other law enforcement officers were working in the vicinity of 240th Street and White Plains Road in the Bronx, New York. ECF No. 1 ("Compl.") ¶ 3(a).[2] Detective Cruz observed several men running across the street into a white car ("Car-1"). Id. As Car-1 attempted to leave the area, a man,

---

[1] The defendant seeks to dismiss either Count One or Count Two of the indictment as multiplicitous. ECF No. 34 at 1. The Government has stated that it does not intend to proceed on Count Two of the indictment. ECF No. 35 at 1. Accordingly, the Court finds that this issue is moot.

[2] Detective Cruz signed and swore to the complaint, filed in support of defendant's arrest. Compl. at 3.

later identified as Quaysean Cannonier, ran toward Car-1 and pulled out an item that appeared to be a firearm from his waistband.  Id. ¶ 3(b).  Cannonier then fired approximately four rounds in the direction of Car-1.  Id.[3]  After firing the weapon, Cannonier entered the passenger side of a dark-colored vehicle ("Car-2"), which drove away.  Id. ¶ 3(c). Detective Cruz and other officers followed Car-2 from the scene of the shooting until the intersection of Bronx River Road and Yonkers Avenue in Yonkers, New York, where other law enforcement officers stopped Car-2.  Id. ¶ 3(d).  Cannonier and the driver were then pulled from Car-2. Id.  As Cannonier was being pulled from Car-2, officers noticed a firearm on the floor of the passenger side of the vehicle.  Id. Officers then arrested Cannonier.  Id.  Cannonier was transported to the 47th Precinct, where he waived his Miranda rights, confessed that he was in possession of the firearm, and confessed to the shooting.  Id. ¶ 3(e).

At the time of the shooting, Cannonier was on supervised release.  He had been previously convicted in this Court of racketeering conspiracy in violation of 18 U.S.C. § 1962(d) on January 22, 2018.  Id. ¶ 4; see Judgment as to Quaysean Cannonier, United States v. Cannonier, No. 15 Cr. 95 (AJN), ECF No. 2048 (Jan. 22, 2018).  For that crime, Cannonier was sentenced to a term of

---

[3]    Law enforcement officers subsequently recovered five shell casings from the area.  Id.

five years' imprisonment followed by a term of three years'
supervised release.  Id.  After his arrest on November 13, 2020,
Cannonier was charged with being a felon in possession of a nine
millimeter pistol ("Count One") and five rounds of nine millimeter
ammunition ("Count Two"), in violation of 18 U.S.C. § 922(g).  He
was also charged with a violation of his terms of supervised
release.

Cannonier's affidavit submitted in support of his motion, ECF
No. 34-1, is limited to discussing the stop of Car-2 and
Cannonier's arrest.  In his affidavit, Cannonier stated that he
was in the front passenger seat in a car driven by Chanise Bandoo
when he was stopped on a public street in Yonkers, New York.  Id.
at 1.  He further stated that prior to the stop and to the best of
his knowledge and observation, Bandoo was not driving in a manner
that violated any vehicle or traffic law.  Id. at 1-2.  Cannonier
also notes that he did not consent to a search of the car.  Id. at
2.

Defendant's motion, ECF No. 33, and memorandum of law, ECF
No. 34 ("Mot.") were filed on February 22, 2022.  The Government's
response was filed on March 22, 2022.  ECF No. 35.  The motion was
fully briefed on April 5, 2022.  ECF No. 36.

**DISCUSSION**

Defendant moves to suppress the weapon police discovered in Car-2 and Cannonier's post-arrest statements. Defendant also moves for an evidentiary hearing.

**A.  The Car Stop and Cannonier's Arrest**

It is settled law, and neither party disputes, that an officer must have reasonable suspicion to conduct an investigatory stop and probable cause to arrest a defendant. See, e.g., United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995). Defendant argues that the police did not have reasonable suspicion to stop Car-2 or the probable cause necessary to arrest Cannonier and search the vehicle because the police may not have continuously followed Car-2 from the shooting to Yonkers or may not have seen Cannonier fire a weapon at Car-1.

Contrary to defendant's argument, officers had both reasonable suspicion to stop Car-2 and probable cause to arrest Cannonier. First, the plain language of the sworn complaint contradicts defendant's theory that officers may not have continuously followed Car-2 from the Bronx to Yonkers. The complaint is clear that on November 13, 2020, Detective Cruz and other officers were "working in the vicinity of 240th Street and White Plains Road in the Bronx, when [Detective Cruz] observed several males running across the street and into a white car ('Car-1')." Compl. ¶ 3(a). The complaint continues, "[a]s Car-1

4

attempted to leave the area, a male, later identified as QUAYSEAN CANNONIER, the defendant, ran towards Car-1 and pulled out from his waistband an item that appeared to be a firearm ('the Firearm'). CANNONIER fired approximately four rounds from the Firearm in the direction of Car-1[.]" Id. ¶ 3(b). Cannonier then entered the passenger side of Car-2. Id. ¶ 3(c). After Car-2 drove away, "[o]ther law enforcement officers and [Detective Cruz] followed Car-2 until the intersection of Bronx River Road and Yonkers Avenue in Yonkers, New York[.]" Id. ¶ 3(d). Despite Detective Cruz's unambiguous sworn statement that she followed the car from the Bronx to Yonkers, defendant nevertheless contends that officers may not have followed the car continuously. Defendant's argument is based solely on the fact that two other police officers who were also present at Cannonier's arrest had stopped and questioned the occupants of a parked BMW sedan that night. Mot. at 9-10. But as the Government points out, there are many reasons why officers other than Detective Cruz may have decided to stop additional cars.[4] In any event, defendant's conjecture does not suffice to contradict Detective Cruz's sworn statement that she followed Car-2 from where she was stationed in the Bronx to Yonkers. Defendant has no explanation for how, if

_____

[4]      Defendant's suggestion that Detective Cruz may have lost sight of him because she did not personally arrest him can easily be explained by the fact that defendant had crossed jurisdictional lines when he drove into Yonkers.

the police did not continuously follow the car, they stopped the correct car.  Defendant's first argument thus fails.

Second, defendant speculates officers may not have seen Cannonier fire the weapon at Car-1.  Defendant's argument is wholly premised on the fact that the sentence in the complaint that describes defendant firing a weapon at Car-1 does not explicitly state that an officer observed Cannonier fire the weapon.  See Mot. at 9 ("We submit that the Complaint's omission of any allegation – that a police officer actually observed someone fire a gun . . . leads to a logical conclusion that while the police may have heard gunfire, they did not actually see a gun being fired by anyone.").

Again, this speculation fails to overcome the clear language of the complaint.  The complaint is clear that Detective Cruz saw the defendant fire a weapon into Car-1.  Detective Cruz and other officers were at the scene, Detective Cruz was looking at the individuals who were getting into Car-1, and "[a]s Car-1 attempted to leave the area, a male, later identified as . . . the defendant, ran towards Car-1 and pulled out from his waistband an item that appeared to be a firearm (the 'Firearm'). CANNONIER fired approximately four rounds from the Firearm in the direction of Car-1 (the 'Shooting')."  Id. ¶ 3(b).  The fact that the sentence describing the shooting does not begin "I observed" is of no

consequence.[5]  Defendant's argument amounts to an attempt to make a substantive distinction out of a purely semantic difference. Thus, defendant's argument that the officers lacked reasonable suspicion to stop or probable cause to arrest Cannonier also fails.

**B.  Cannonier Lacks Standing to Object to the Search**

Cannonier further objects to the search of the car, because he and the driver were already secured by the time that the officers searched the car, and seeks to suppress the evidence of the gun the officers found.[6]  A "defendant seeking suppression of evidence found without a search warrant must show that he had a reasonable expectation of privacy in the place or object searched." United States v. Santillan, 902 F.3d 49, 62 (2d Cir. 2018) (citation and quotation marks omitted).  As a passenger in Car-2, who does not claim any property interest in the vehicle or right to exclude others from it, Cannonier did not have a legitimate expectation of privacy in the car.  See Rakas v. Illinois, 439 U.S. 128, 148-49 (1978) (holding that defendants had no "legitimate expectation of privacy in the glove compartment or area under the

---

[5]      Moreover, even if defendant's speculation that officers had only heard the shooting, but not seen it were correct, the officers still would have had probable cause to arrest Cannonier.  The Second Circuit has found that an officer had probable cause to arrest a defendant where an officer heard gunshots, looked in the direction of the shots, saw the defendant, and the defendant fled, regardless of whether the officer actually saw the gun. Husbands ex rel. Forde v. City of New York, 335 F. App'x 124, 127 (2d Cir. 2009).  Similarly here, if officers heard gunshots, saw the car fleeing from the direction of the noise, and followed the car, the officers had probable cause.

[6]      Cannonier appears to concede this point on reply.  Nevertheless, the Court addresses this argument in order to be complete.

seat of the car in which they were merely passengers"). Since "a defendant's Fourth Amendment rights are violated only when the challenged conduct invade[s] *his* legitimate expectation of privacy rather than that of a third party," Santillan, 902 F.3d at 62 (citations and quotation marks omitted), Cannonier does not have standing to argue that the police should not have searched the car.

**C.  Defendant's Request for a Hearing**

The defendant's request for an evidentiary hearing is denied. The Court is "not required as a matter of law to hold an evidentiary hearing" if "an affidavit of someone with personal knowledge of the underlying facts" does not "state sufficient facts which, if proven, would have required the granting of the relief requested[.]" United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) (citations omitted); see also United States v. Filippi, No. 12 Cr. 604 (RA), 2013 WL 208919, at *9 (S.D.N.Y. Jan. 16, 2013) ("An evidentiary hearing on a motion to suppress ordinarily is required only if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'") (quoting United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992)). Here, the defendant's affidavit and the sworn complaint in this matter are entirely consistent, and so there would be no purpose in holding a hearing.

<u>**CONCLUSION**</u>

For the foregoing reasons, the motion is denied.  The Clerk of Court is respectfully directed to terminate the pending motion.


**SO ORDERED.**

Dated:   New York, New York
         May 2, 2022

                                    _____
                                      NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE