

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 3, 2023

**BY ECF**

The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:    *United States v. Quaysean Cannonier*, 20 Cr. 674 (NRB)

Dear Judge Buchwald:

    The Government respectfully submits this letter in advance of sentencing of defendant Quaysean Cannonier, which is scheduled for March 9, 2023, at 11:00 a.m.

    On November 13, 2020, less than three months after his release from custody following a five-year federal sentence for racketeering, the defendant unlawfully possessed and discharged a firearm and then attempted to flee – violating both federal law and his conditions of supervised release. The defendant pleaded guilty to one count of possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1), pursuant to a *Pimentel* letter, which calculated an offense level of 30, a Criminal History Category of III, and a Guidelines sentence of 120 months' imprisonment. The Presentence Investigation Report ("PSR") prepared by the Probation Department similarly calculates a 120-month sentence but places the defendant in Criminal History Category IV. The defendant disagrees with the Government and Probation and calculates a Guidelines range of 24 to 30 months' imprisonment. The defendant seeks a sentence of time served.

    As set forth below, and consistent with the recommendation of Probation, the Government submits that a sentence of 120 months' imprisonment on Count One is sufficient, but no greater than necessary, to achieve the purposes of sentencing, as set forth in 18 U.S.C. § 3553(a). The Government further submits that the Court should impose an additional 8 to 14 month sentence on the pending violation of supervised release. *See* 15 Cr. 95. Consistent with the policy of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), this term of imprisonment should run consecutively to the defendant's other term of imprisonment. *See* U.S.S.G. § 7B1.1, Part B. Thus, altogether, the Government requests that the Court sentence the defendant to 128 to 134 months' imprisonment.

I.    **Offense Conduct**

On November 13, 2020, the defendant arrived in the vicinity of 240th Street and White Plains Road in the Bronx, and began speaking with certain individuals. Meanwhile, a second group of individuals left a nearby club, crossed the street and entered a second car. As that second car began to leave the scene, the defendant pulled out a firearm and shot five times, aiming at the passengers in the second car. To the Government's knowledge, no one was hit. (PSR ¶¶ 10-13).

After the shooting, the defendant fled the scene in a car. Law enforcement officers who were on scene followed the car and apprehended the defendant. The officers recovered a firearm from the front passenger seat of the car – precisely where the defendant had been seated. The defendant later admitted that the firearm was his and that he had committed the shooting. (PSR ¶¶ 14-15). In canvassing the scene for evidence, law enforcement officers found five shell casings in the vicinity of where the defendant had discharged the firearm. (PSR ¶ 12).

The defendant was arrested pursuant to a federal Complaint on November 16, 2020. (PSR ¶ 18). A two-count Indictment was filed against the defendant on December 8, 2020. (PSR ¶ 1).

II.   **The Defendant's Plea and Applicable Guidelines Sentence**

On August 2, 2022, the defendant pled guilty to Count One of the Indictment, which charged him with possessing a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).[1] In advance of the plea, the Government provided the defendant with a *Pimentel* letter, which calculated the offense level as 30, pursuant to U.S.S.G. §§ 2X1.1(c)(1), 2A2.1(a)(2), and based on the Government's view – shared by Probation – that the shooting would have constituted first-degree murder. (PSR ¶ 5). The Government further calculated that the defendant had five criminal history points and was in Criminal History Category III, which resulted in a Guidelines sentence of 120 months in prison. (PSR ¶ 5).

In the PSR, Probation calculates that the defendant has nine criminal history points and is in Criminal History Category IV. Specifically, Probation identifies a June 29, 2020 larceny conviction, for which the defendant receives two additional points, (PSR ¶ 56), and assesses two points for the defendant's November 2012 robbery conviction, (PSR ¶ 39).

Upon review of the PSR, the Government agrees with Probation that the defendant is in Criminal History Category IV. Whether Category III or IV, however, the Guidelines sentence remains 120 months' imprisonment when the offense level is 30, as proposed by the Government and Probation.

III.  **Discussion**

A.  **Applicable Law**

As the Court is well aware, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that range "should be the starting point and

---

[1] The Government charged the defendant in two counts but has agreed to dismiss Count Two.

the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After making the initial Guidelines calculation, a sentencing judge must then consider the seven factors outlined in Title 18, United States Code, Section 3553(a), including, among others, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentencing disparities.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, including:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. The Probation Department Correctly Calculated the Guidelines

As an initial matter, the Court should find that the attempted murder cross-reference applies, that the offense level is 30, and that the Guidelines sentence is 120 months' imprisonment.

The federal murder statute defines murder as "the unlawful killing of a human being with malice aforethought," and defines "[e]very murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing" as a first-degree murder. 18 U.S.C. § 1111. Any other murder is defined by statute as second-degree murder. 18 U.S.C. § 1111; *see United States v. Delaney*, 717 F.3d 553, 556 (7th Cir. 2013) ("The only difference between the two degrees of murder, sharing as they do the requirement that the murderer have acted with 'malice aforethought,' is … that a first-degree murder … must be 'premeditated.'").

An attempt to commit murder requires a specific intent to kill. Such an intent may be inferred from circumstantial evidence. *See United States v. Muyet*, 994 F. Supp. 501, 517 (S.D.N.Y. 1998). For example, courts frequently infer such an intent based on firing at a victim at close range. *See, e.g., United States v. Atehortva*, 69 F.3d 679, 687 (2d Cir. 1995) (concluding that a district court could find intent to murder where there was "undisputed evidence that [the defendant] repeatedly fired a gun at federal agents from close range"); *United States v. Stroman*, 498 F. App'x 67, 69 (2d Cir. 2012) (affirming district court determination that attempted murder was intentional based on observation that surveillance video showed that defendant pursued two men into a grocery store and fired gun at them at close range); *Muyet*, 994 F. Supp. at 518-19 (collecting New York state cases which outline intent to kill, including cases involving defendants who point and fire guns at their intended victims at close range); *United States v. Ashburn*, No. 11 Cr. 303 (NGG), 2015 WL 5098607, at *17 (E.D.N.Y. Aug.

3

31, 2015) (citing New York state cases which establish that "shooting a firearm at close range generally evidences the intent to kill, not seriously injure"); *United States v. Rodriguez*, No. 12 Cr. 73 (JGM), 2015 WL 3454725, at *2 (D. Vt. May 29, 2015) ("[F]iring multiple shots at close range and preventing any mitigation of the damage is sufficient to establish intent to kill.") (citations omitted), *aff'd*, 626 F. App'x 314 (2d Cir. 2015); *see also People v. Gonzalez*, 216 A.D.2d 412, 628 N.Y.S.2d 726, 727 (1995) (intent established by defendant's overt acts of brandishing gun, turning it towards the intended victim, and firing it at least twice); *People v. Van Buren*, 213 A.D.2d 504, 623 N.Y.S.2d 906, 907 (1995) (evidence sufficient to establish attempted murder where defendant pointed gun at police officer and fired).

Here, the circumstances surrounding the shooting evince the specific intent to kill. There is nothing about the facts of the shooting that suggest the defendant was attempting to miss his target. To the contrary, the defendant's stationary pose, careful aim, and the fact that he fired at the moving car at least five times demonstrate that he was trying to kill the individuals in the car. The defendant cannot plausibly argue that he was trying to hit, but not kill, the passengers in the car when he fired at them five times. Moreover, the shooting was at close range, and the defendant took careful aim at the car, waiting until the car was closest to him to discharge his firearm.

The arguments made by the defendant to the contrary are unavailing. First, the defendant cites to *United States v. Stroman*, 420 F. App'x 100 (2d Cir. 2011) ("*Stroman I*"), for the proposition that the "mere appearance of a random shooting on surveillance footage does not support" a finding of specific intent to kill. Def. Submission at 19. But *Stroman I* only held that a district court's statement that the defendant's actions captured by video surveillance footage "looked like" the defendant was "attempting to kill someone" was insufficient to support the court's finding of specific intent and was therefore procedural error. *Id*. at 105. On remand, the district court clarified its finding that the defendant – who followed two individuals into a grocery store and shot at them – had acted with specific intent to kill those victims. *United States v. Stroman*, No. 09 Cr. 339 (ILG), 2011 WL 2444851 (E.D.N.Y. June 15, 2011). The Second Circuit affirmed. *United States v. Stroman*, 498 F. App'x 67 (2d Cir. 2012) ("*Stroman II*"). Therefore, *Stroman I* and *Stroman II* do not support the argument that the "mere appearance of a random shooting on surveillance footage does not support" a finding of specific intent, as suggested by defendant. In fact, they stand for the exact opposite: In that case, the defendant's actions in shooting at passengers in a car are sufficient to establish specific intent to kill absent additional evidence of the defendant's state of mind.

Second, the defendant cites to several cases in this District that involved shootings where the attempted murder cross-reference was not applied. Def. Submission at 20 - 25 (citing *United States v. Williams*, 21 Cr. 793 (LJL); *United States v. Alston*, 21 Cr. 769 (LJL); *United States v. Watson*, 20 Cr. 346 (JSR); *United States v. McKenzie*, 18 Cr. 834 (PAE); *United States v. Tartt*, 20 Cr. 339 (LGS); *United States v. Escort*, 21 Cr. 387 (DLC); *United States v. Knox*, 21 Cr. 46 (GBD); *United States v. Smith et al*., 20 Cr. 317 (LTS)). But these cases are distinguishable.

As an initial matter, *Williams*, *Alston*, *Watson*, and *McKenzie* appear to reflect negotiated plea agreements between the Government and the defendant, and thus it is impossible to conclude – one way or another – whether the conduct at issue constituted an attempted murder. As to the remaining cases where courts were asked to determine whether the conduct constituted attempted murder, those cases can be distinguished on their facts:

4

- In *Knox*, there was no video of the shooting, and thus, the court was unable to decide whether the defendant had shot first or, as the defendant claimed, shot in self-defense.

- In *Tartt*, the court reviewed video of the shooting and concluded that the defendant lacked the intent to kill because he "did not keep shooting" after he missed twice, and if he had the intent to kill, "it seems likely that he would have continued to shoot immediately after the miss." (20 Cr. 339 (LGS), Dkt. 60, at 2). Here, by contrast, the defendant kept shooting; it was only because the car pulled away that the defendant stopped.

- In *Escort*, the court declined to apply the attempted murder cross-reference upon a finding that the shooting did not take place at "close range." (21 Cr. 387 (DLC), Dkt. 58, at 8). But here the video evidence makes clear that the shooting was at close range, and the defendant waited to discharge his gun until the car was closest to him.

- In *Smith et al.*, the court declined to apply the attempted murder cross-reference upon a finding that the defendant "shot downward" and did not aim for a "vital organ." (20 Cr. 317 (LTS), Dkt. 87, at 7). The circumstances of this shooting are different, of course. Here, the defendant aimed directly at the car in which several individuals were seated.

Thus, notwithstanding the defendant's citation to several cases in this District where the attempted murder cross-reference was not applied, the Government respectfully submits that the facts of this case warrant such an enhancement.

### C. A Sentence Of 120 Months' Imprisonment On Count One Is Appropriate

The Government respectfully submits that a sentence of 120 months' imprisonment is fair and appropriate in this case in light of the Section 3553(a) factors. The defendant's requests for leniency and time-served are unavailing.

*First*, a sentence of 120 months' imprisonment is necessary to reflect the serious nature of the offense. The defendant committed a violent shooting in the Bronx, just months after his release from federal custody. He then led police on a dangerous chase through the streets of New York. While no one was hit during the shooting, that is sheer luck and the defendant should not be rewarded for his aim or lack thereof. Thus, in light of this serious conduct, a sentence of 120 months' imprisonment is reasonable and appropriate.

*Second*, a Guidelines sentence is necessary to deter the defendant and others from future crimes. With respect to general deterrence, as the Court is aware, New York City is in the wake of an unprecedented gun violence epidemic. As such, the Government respectfully submits that the Court should send a message to other individuals who are thinking about carrying and using firearms that the consequences are doing so are serious and will involve significant periods of incarceration. Equally important, a Guidelines sentence is necessary to deter the defendant from future misconduct. The defendant's criminal history is worrisome. Just months after his release from custody, and while on supervised release, the defendant possessed and discharged a firearm. The defendant was previously

sentenced to 60 months' imprisonment and yet he still reoffended. Notably, at the defendant's last sentencing, he represented to the Court that he was "becoming a better person" and was on a "path of redemption" while at the MCC. (15 Cr. 95, Dkt. 1970-7, at 2). He presented the Court with a "5 year plan" that involved learning how to balance and adjust to his new life, and made plans to save money and attend college. (*Id.* at 2-3). He swore that "I HATE! This place I'm not coming back." (*Id.* at 5). Of course, none of those plans came to fruition and there is little reason to believe that this time – unlike the last time – anything has changed. Thus, a Guidelines sentence is necessary to deter future crimes by the defendant.

*Third*, the defendant's arguments in favor of a time-served sentence are unavailing. While the defendant has had a difficult childhood and has been the victim of neglect and abuse by those who should have cared for him, that tragic upbringing does not excuse the defendant's use of violence for his own purposes. Whatever his background, the defendant does not have the right to shoot at – and attempt to kill – others. He was previously given the support of Probation during his first term of supervised release, and yet he chose to reoffend and violate the terms of his release. At this point, and for all of the reasons set forth above, a lengthy prison sentence is necessary.

### D. The Court Should Impose a Consecutive Sentence of 8 to 14 months On The Violation of Supervised Release.

Finally, in addition to a prison sentence on Count One, the Court should sentence the defendant to a Guidelines sentence of 8 to 14 months' imprisonment on the pending violation of supervised release. Consistent with the policy statement of the Guidelines, this additional term of imprisonment should run consecutively to the defendant's other term of imprisonment. U.S.S.G. § 7B1.1, Part B. That is because a prison sentence for a violation of supervised release is designed to punish, not the new offense (here, the defendant's possession of a firearm), but the breach of the Court's trust. Thus, an additional 8 to 14 months in prison is appropriate.

\*   \*   \*

For the reasons set forth above, the Government respectfully submits that a Guidelines sentence of 120 months' imprisonment on Count One, and 8 to 14 months' imprisonment on the supervised release violation is fair and appropriate in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: /s/
Alexandra Rothman
Assistant United States Attorney
(212) 637-2580